UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICK SMOLICZ, | : |
| Plaintiff, | : |
| v. | : 3:04-cv-00855 (WWE) |
| BOROUGH/TOWN OF NAUGATUCK, DENNIS E. CLISHAM (in his official and individual capacity), THOMAS J. HUNT (in his official and individual capacity) and JAMES FORTIN (individually only), | : |
| Defendants. | : |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This action arises from plaintiff Rick Smolicz's claims of the violation of his constitutional rights. Specifically, plaintiff claims that defendants deprived him of his rights under the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §§ 1983 and 1988; restrained his exercise of free speech; violated his right to procedural and substantive due process; violated his right to privacy; violated his Fourth Amendment right to be free from unreasonable search and seizure; violated his right to the freedom of association and infringed on his right to petition the government for grievances. Additionally, plaintiff asserts two state claims: abuse of process and theft. Defendants Chief of Police Dennis E. Clisham, Deputy Chief of Police Thomas Hunt and Police Captain James Fortin, all employed by the Police Department of the Borough of Naugatuck, move for summary judgment on all of

plaintiff's claims.

## BACKGROUND

At all times relevant to this action, plaintiff was employed by the Police Department of the Borough of Naugatuck and was a member of the Connecticut Independent Police Union (CIPU Local #2).

Plaintiff became a Naugatuck police officer on January 1, 1990. In November or December of 1999, he became shift steward of the local section of his union. He remained active in the union through November 2004.

In or about January 2000, he began publishing a newsletter first named "CIPU #2 Newsletter," then referred to as "Union News" and, ultimately, "Police Biz." This newsletter appeared in both hard copy and on the internet. Plaintiff continued to publish this newsletter at least until December 2003.

On July 22, 2000, Falon Fox was a prisoner being held at the Naugatuck Police Department. On this date and while plaintiff was the supervisor in charge, Fox committed suicide in her cell. Pursuant to Police Department regulations, as the supervisor in charge, plaintiff was required to physically inspect the prisoners every thirty minutes. It is undisputed that plaintiff failed to follow this regulation. In fact, plaintiff left the Police Headquarters for approximately four hours during the time he was on duty.

As a result of plaintiff's failure to follow regulations, a May 22, 2001 investigation found that plaintiff was guilty of "neglect of duty" on July 22, 2000 in violation of Police Department of the Borough of Naugatuck Rule 17(I)(1) in that he failed to insure that the prisoner was checked every thirty minutes. Following this investigation, plaintiff was

suspended for thirty days, was reduced in rank from sergeant to patrolman, was deemed unable to take the sergeant qualifying test for two years, and was required to undergo forty hours of retraining of police policies and procedures.

In January 2002, plaintiff slipped and fell on ice while on his way to a police call. As a result of this fall, he suffered injuries to his hip and has since been unable to perform the physical requirements of the job. Plaintiff was thus out of work, receiving Workers' Compensation. On January 1, 2004, plaintiff was put on full disability, receiving his full disability retirement pension, because he could not perform the essential functions of the job. In November 2004, plaintiff moved out of state.

Beginning in March 2003, plaintiff began mailing a photograph to various public officials and/or their spouses. The picture depicted two naked females simulating oral sex. The words "More to Follow" were written on this photograph.

On March 14, 2003, defendants Hunt and Fortin prepared a search and seizure warrant application for the search of plaintiff's residence, specifying the items to be seized as "all electronic data files, computer directories and subdirectories, computer hard drive files that contain pornography, and any other files and information stored within the internal workings of personal computers, that may pertain to the investigation. Any computer printing or scanning equipment that may pertain to this investigation. All photographs, letters, or other written correspondence that pertains to this investigation." Defendants obtained the signature of a judicial officer and, at approximately 3:00 p.m., the search and seizure warrant was executed by Deputy Chief Hunt, Captain Fortin, Detective Carver, Detective Simpson, Sergeant Allen, Officer Bernegger, Detective Deeley and Detective Blanchard. 118 items were seized.

**DISCUSSION**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which it has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 24.

**I.    First Amendment Retaliation**

Plaintiff contends that defendants violated his First Amendment right to free speech in that they retaliated against him for exercising this right.  Defendants argue that plaintiff does not establish a prima facie case of First Amendment retaliation and

4

that they are entitled to summary judgment on this claim.  The Court disagrees with defendants.

In order to state a prima facie case of retaliation under § 1983, "a plaintiff must demonstrate that: 1) his or her speech was constitutionally protected; 2) he or she suffered an adverse employment action; 3) a causal connection exists between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination."  Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004).

Plaintiff argues that his speech was constitutionally protected.  He claims that because his newsletter addressed issues of public concern – i.e., the improper use of power and violation of public trust on the part of public officials – it extends beyond the mere expression of an individual worker in relation to his own employment and personal experience related thereto.

The United States Supreme Court has identified two inquiries that must be made in order to delineate a public employee's right to freedom of speech.

> The first [inquiry] requires determining whether the employee spoke as a citizen on a matter of public concern.  If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.  If the answer is yes, then the possibility of a First Amendment claim arises.  The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.  The consideration reflects the importance of the relationship between the speaker's expressions and employment.  A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.

Garcetti v. Ceballos, – U.S. –, 126 S.Ct. 1951, 1958, – L.Ed.2d – (2006) (citations omitted).

In this case, plaintiff's newsletters are expressions of a private citizen speaking on matters of public concern. In the newsletters, he does address issues such as his claims of the Police Chief's abuse of power and corruption throughout the Police Department. Speaking out in a public venue about what he believes exists within the Department and that the public has the right to know is protected speech under the First Amendment. Furthermore, plaintiff, as an employee of the Police Department, is one with enhanced knowledge of the inner workings of the Department merely by virtue of being in its employ. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In Pickering, the United States Supreme Court held that a teacher writing in the local newspaper about school budget and the Board of Education's expenditures was protected by the First Amendment. The Court found that plaintiff, as a teacher, was in a unique position in which he was afforded insight as to the Board of Education's allotment of funds. "Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal." Id., at 572. Here, plaintiff, as a police officer, is similarly privy to special insight as to the Police Department's claimed machinations and may recognize the public's need to be aware of same.[1] Accordingly, plaintiff satisfies the first prong of the prima facie case.

---

[1] While the Court may find the vulgarity inherent to these newsletters objectionable, such assessment does not play a role in its analysis. It rightfully does play a role in the Court's inquiry regarding the photographs sent to public officials and spouses. The photographs are not expressive of any "public concern;" they are examples of profanity sent to plaintiff's employers to harass the recipients. The photographs are not protected speech under the First Amendment.

6

As for the second prong of the test, it is a question of fact for the jury as to whether plaintiff meets the established requirement: i.e., that he suffered an adverse employment action as a result of the expression of constitutionally protected speech. It is undisputed that plaintiff was demoted from sergeant to patrolman in July 2001. While defendants argue that this demotion was part of the repercussions of the investigation into Fox's suicide while plaintiff was absent from his duties as supervisor, it is conceivable that the demotion was, in fact, a retaliatory act in response to the newsletter that he had started publishing in December 2000 and the views expressed therein. This factual dispute is to be resolved by the trier of fact and is not appropriately determined at summary judgment.

Consequently, it is not possible at this stage to assess plaintiff's satisfaction of the third prong of the test: whether there is a causal connection between the adverse employment action and his protected speech. Because plaintiff has not defined the "adverse employment action," it is not possible to proceed further with the inquiry.

    II.    **Fourth Amendment Search and Seizure**

Plaintiff claims that his rights pursuant to the Fourth Amendment of the United States Constitution were violated in that defendants unlawfully searched his home and seized items related to the publication of his newsletter and an upcoming hearing related to his union activities.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched,

7

and the persons or things to be seized."

"Ordinarily, a search or seizure pursuant to a warrant is presumed valid." U.S. v. Awadallah, 349 F.3d 42, 64 (2d Cir. 2003). There are exceptions, however, to this presumption. If a warrant contains intentional and material misrepresentations or omissions, the warrant is judged invalid and the search and seizure may be deemed unconstitutional. "A misrepresentation or omission is intentional when the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth." Id. A factual representation is "material" when it is a necessary element for the finding of probable cause. "The ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." Id., at 65.

In order to establish probable cause, one must consider the totality of the circumstances. U.S. v. Cancelmo, 64 F.3d 804, 808 (2d Cir. 1995) ("a search warrant is properly issued if a neutral magistrate finds that, under the totality of the circumstances, probable cause exists to believe that a crime has been committed."). Furthermore, the affiant must demonstrate that "there is a fair probability that the premises will yield the objects specified in the search warrant." U.S. v. Kee, 2000 WL 760098, *2 (S.D.N.Y.).

An application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same probable cause standard used to review warrant applications generally. ACLU of Maryland v. Wicomico County, Maryland, 999 F.2d 780 (4th Cir. 1993).

Plaintiff asserts that the warrant was invalid because it contained false

information that was material to the finding of probable cause. He claims that there was no probable cause for the warrant's representation that the items to be seized would serve as evidence of the charges of Conn. Gen. Stat. § 53a-183, Harassment in the Second Degree, and Conn. Gen. Stat. § 53a-181, Breach of the Peace. He also claims that the search and seizure constituted a violation of his rights pursuant to the First Amendment in that it constituted a chilling of his expression of free speech.

Defendants argue that the warrant was valid in that it was supported by probable cause, particularly described the place to be searched and the items to be seized, and was issued by a neutral and detached magistrate. The Court agrees.

The Court finds that the warrant was issued with probable cause. There is ample evidence that the Naugatuck Police Department received numerous complaints that citizens had received unsolicited photographs of nude women simulating oral sex with the words "More to Follow" inscribed on the document. Three of these individuals (the Naugatuck Police Commissioner, a Naugatuck Burgess, and the chairman of the Naugatuck Police Commission) filed written complaints with the Police Department in which they stated that they were extremely upset and distressed by this receipt of the photographs.[2] Two of the complainants stated that they had received previous mailings from plaintiff and that there were distinct similarities between the appearance of the envelopes containing the pictures and those enclosing "Police Biz." Observing the physical evidence and making comparisons to the typeset of and errors in the address labels between the two mailings, defendants Hunt and Fortin had reason to believe that

---

[2]At his deposition, plaintiff admitted sending these photographs.

the envelope labels and the photographs were produced by the same computer and computer-generated printer belonging to plaintiff.  The "Police Biz" mailings included the return address of 33 Wilkenda Avenue, Waterbury, Connecticut.  At all relevant times, this was plaintiff's home address. Based on this evidence, Hunt and Fortin determined that there was a "fair probability that contraband or evidence of a crime [would] be found in a particular place;" to wit, plaintiff's residence.  Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1982).

As for the particularity of the warrant, the application delineates the place to be searched (including the address and description of the house) and the items to be seized. Plaintiff argues that defendants went beyond the scope of the list of items in that the officers seized audio tapes in addition to, *inter alia*, the written material related to the investigation, computer discs and computer equipment which were specified in the warrant application.  Defendants counter that plaintiff presents no more than conclusory statements supporting his contention that they exceeded the bounds of the search.   Although the Court finds that defendants did surpass the contours of the warrant, it determines that this in no way invalidates the search in its entirety.

"[A] search is not rendered invalid merely because agents seize items that are outside the scope of the warrant." United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 61 (D.Conn. 2002).  Even "the improper seizure of many items outside a warrant's scope does not alone render the whole search invalid . . . ." United States v. Hamie, 165 F.3d 80, 84 (1st Cir. 1999).  "The Second Circuit has stated 'the remedy with respect to any items exceeding the scope of the warrant [is not] invalidation of the search but suppression of those items.'" U.S. v. Longo, 70 F.Supp.2d 225, 252

(W.D.N.Y. 1999) (citing U.S. v. George, 975 F.2d 72, 79 (2d Cir. 1992)).

Applied to the present motion, the audio cassettes in question may have been beyond the scope of the warrant, but their seizure does not invalidate the search in its entirety. The seizure does not amount to the "flagrant disregard" of the contours of the warrant and the proper remedy for plaintiff is a suppression hearing on the admissibility of the evidence. See U.S. v. Matias, 836 F.2d 744, 747 (2d Cir. 1988). The other items specifically designated in the warrant were properly seized and the warrant thus is deemed valid.

Furthermore, plaintiff provides no evidence that the judicial officer who signed the warrant was anything but neutral and detached. Accordingly, defendants prevail on this prong of the test.

Because defendants satisfy all three conditions necessary for proving the validity of a warrant and the subsequent search and seizure, it is not necessary to consider plaintiff's claim that such search was conducted only as retaliation for his protected speech. Possessing probable cause, the warrant is independent of such claim. It is not necessary to examine the subjective motivation behind the police search. "Where, as here, a neutral and detached magistrate has found probable cause for the issuance of a search warrant, the subjective motives of the police officers executing the warrant are simply not relevant." Malatesta v. New York State Div. of State Police, 120 F.Supp.2d 235, 241 (N.D.N.Y. 2000).[3]   The Court will grant defendant's motion for summary

---

[3]Even if the Court were to consider plaintiff's claim of retaliation, we would find that plaintiff's argument fails. There was no "chilling" of his rights: he continued to publish his newsletter and attend union meetings after the search was executed.

11

judgment vis a vis plaintiff's claim of illegal search and seizure.

### III.   Due Process

1.   Fifth Amendment

Plaintiff's claim of a Fifth Amendment violation is not ripe for this Court's adjudication.  The Just Compensation Clause of the Fifth Amendment may not be evoked until the plaintiff has not been justly compensated for the property taken. Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).  "[B]efore a plaintiff may assert a federal takings claim, he must first seek compensation from the state if the state has a reasonable, certain and adequate provision for obtaining compensation." Id.  See also, Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 379-80 (2d Cir. 1995).

Connecticut provides a statutory provision for obtaining compensation for seized property: Conn. Gen. Stat. § 54-33g.  There is no evidence in the record that plaintiff utilized this statutory procedure or claimed that it was not reasonable, certain or adequate for his needs.  Instead, he asserts a conclusory statement that defendants maliciously designated the search and seizure an "internal affairs" matter which, he claims, allowed them to evade the statute's scope and thereby avoid the return of plaintiff's property.  There is no evidence provided that could support this claim of defendants' motive.  "Plaintiff['s] conclusory allegations about [defendants'] evil motives do not defeat the defendants' motion for summary judgment." Ackley v. Gulf Oil Corp, et al., 726 F.Supp. 353, 369 (Conn. 1989).

Because plaintiff provides no other reasoning as to his failure to utilize the relevant Connecticut statutory remedy, his claim pursuant to the Fifth Amendment is not

ripe and may not be determined by this Court. The Court will grant defendants' motion for summary judgment on this ground.

  2.  Fourteenth Amendment

  Plaintiff claims that defendants violated his constitutional rights to procedural and substantive due process pursuant to the Fourteenth Amendment. Defendants argue that neither plaintiff's procedural due process nor his substantive due process rights were violated. The Court agrees with defendants.

  It is well settled that the analysis of a procedural due process claim proceeds in two parts. First, the court must assess whether plaintiff has a liberty or property interest protected by the Constitution. If so, "the second step of the analysis . . . asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." Narumanchi v. Board of Trustees of Conn. State University, 850 F.2d 70, 72 (2d Cir. 1988). In the present case, plaintiff received the due process to which he was entitled.

  Plaintiff claims that his rights under the Fourteenth Amendment were violated in that he was subject to an illegal search and seizure and a wrongful withholding of his property. Because the Court has already determined that the search and seizure were valid and that plaintiff's claim of illegal taking is not ripe for our review, plaintiff's rights have not been violated. He received the necessary procedural due process: the valid warrant that controlled the search of his residence and the seizure of the personal property designated in the warrant. As discussed, *supra*, the Court has determined that the audio tapes seized were not so far out of the bounds of the warrant as to invalidate the entire search. Therefore, the issuance of the valid warrant satisfies plaintiff's rights

to procedural due process.

As for substantive due process, plaintiff must demonstrate that he has a constitutional property interest and that "defendants infringed that property interest in an arbitrary or irrational manner." Gavlak v. Town of Somers, 267 F.Supp.2d 214, 222 (D.Conn. 2003).

> The Constitution, of course, does not create any property interests. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. The Second Circuit has held that 'in almost all cases, the existence of a federally protectable property right is an issue of law for the court.'

Id. (citing Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999)). The court must determine "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8, 118 S.Ct 1708, 140 L.Ed.2d 1043 (1998).

While plaintiff satisfies the first prong of this test in that he has a constitutional right to be safe from illegal search and seizure, the validity of the search warrant precludes a finding of an "egregious" or "outrageous" infringement of that right. The Court will grant defendants' motion for summary judgment as to plaintiff's Fourteenth Amendment claims.

**IV.    Right to Privacy**

Plaintiff claims that defendants violated his right to privacy pursuant to both federal and state law. He asserts that defendants violated his rights by exceeding the scope of the warrant by the seizure of his personal papers, papers protected by the

attorney-client privilege, and items related to his union activities.  Defendants argue that plaintiff has neither a Fourth Amendment right nor a due process right pursuant to the Fourteenth Amendment regarding the valid seizure of these documents.  The Court agrees with defendants.

"[M]agistrates have the authority to issue search warrants, which obviously intrude upon privacy interests."  In re United States of America, 10 F.3d 931, 938 (2d Cir. 1993).  The Court has determined, *supra*, that the warrant in question was valid.  Here, the warrant indicated that the search was to cover "[a]ll photographs, letters, or other written correspondence that pertains to this Investigation."  The items in question fall within this delineated category.

Furthermore, the police officers had probable cause to believe that such items were related to the investigation.  The officers must have "a reasonable basis for believing that the seized evidence was reasonably related to the offense which formed the basis for the search warrant."  State v. Onofrio, 179 Conn. 23, 40-41 (1979).  It is reasonable that the offenses under investigation, Harassment in the Second Degree and Breach of the Peace, could entail evidence pertaining to a lawsuit, papers regarding future grievances through union activities, and personal papers.  The proper procedure for determining the inadmissibility of the seized evidence is a suppression hearing; such a determination is premature at this stage.  The Court will grant defendants' motion as to plaintiff's federal and state claims of invasion of right to privacy.

**V.    Qualified Immunity**

Defendants argue that Clisham, Fortin and Hunt are entitled to qualified immunity because they did not violate plaintiff's Constitutional rights.  Plaintiff claims this is erroneous because the individual defendants included false information in their application for the search warrant and exceeded the scope of the warrant as to items seized, thus violating his rights.

Qualified immunity shields government officials "whose conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The scope of qualified immunity is broad.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The test for qualified immunity is twofold and must be considered in sequence.  The threshold question is whether, taken in the light most favorable to the plaintiff, do the facts demonstrate the official's violation of one of the plaintiff's constitutional rights.  The next question is whether that constitutional right was clearly established within the specific context of the case.  In other words, the court must consider whether the constitutional right was clear enough so that a reasonable officer would understand that his actions would violate that right.  Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

"The immunity to which a public official may be entitled in a § 1983 action depends initially on the capacity in which he is sued.  To the extent that a public official is sued for damages in his individual capacity, depending on the nature of the functions

he performs, he may be entitled to absolute or qualified immunity. These defenses of absolute immunity and qualified immunity are the official's personal privileges for his official acts. They do not belong to the governmental entity, and the entity itself is not allowed to assert them." Otero v. Colligan, 2006 WL 1438711, *15 (D.Conn.) As for a suit in an official's official capacity, that is actually a claim against the governmental entity to which the official belongs. "Therefore, since the governmental entity itself possesses no personal privilege of absolute or qualified immunity, those privileges are available to governmental officials only with respect to damage claims asserted against them in their individual capacities. They are not available to the extent the officials are sued in their official capacities." Id.

Public officials sued in their individual capacity are entitled to qualified immunity from suit unless "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). And "even assuming a state official violates a plaintiff's constitutional rights, the official is protected nonetheless if he objectively and reasonably believed that he was acting lawfully." Luna v. Pico, 356 F.3d 481, 490 (2d Cir.2004).

In the present case, the constitutional violation that plaintiff may have suffered was his demotion from sergeant to patrolman. There was no constitutional violation that attached to the search of plaintiff's home and the seizure of items found therein. Thus, it is necessary only to examine the decision to demote plaintiff and determine which, if any, defendants were responsible for such action.

There is no evidence that defendants Thomas Hunt and James Fortin, by virtue

17

of their professional capacities as Deputy Chief of Police and Captain, respectively, were responsible for the decision to demote plaintiff.  They only were directly involved in the search of plaintiff's residence.  Because there was no constitutional violation attached to the search, they are entitled to qualified immunity in both their individual and official capacities.

However, the Chief of Police, Dennis Clisham, was responsible for the final decisions regarding discipline, punishment and issues of employment.  His decision to demote plaintiff may have been retaliatory in nature and, therefore, he is not entitled to qualified immunity on this ground.

In the present case, it is not evident whether Clisham believed that he was acting lawfully when he demoted plaintiff to the rank of patrolman.  While the Fox suicide may have been the reason for Clisham's treatment of plaintiff, there exists a question of fact as to the true nature of the action.

**VI.    Municipal Immunity**

Plaintiff argues that defendants Clisham and Hunt are officials who dictated the official policies of the Naugatuck Police Department.  As such, he claims that the borough of Naugatuck may be held liable for the constitutional violations he alleges the defendants committed.  Defendants assert that the Police Commission is the final authority regarding policy and that there is no evidence that Clisham or Hunt violated plaintiff's constitutional rights pursuant to any established policy or custom.

Because the only defendant who may be found to have violated plaintiff's constitutional rights is Clisham, our analysis will consider only his actions regarding plaintiff's demotion.  "[T]he language of § 1983 . . . compels the conclusion that

Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1977).

There is no evidence that Clisham acted pursuant to an official policy or custom. His demotion of the plaintiff, even if deemed unconstitutional, cannot be considered reflective of a policy or custom of the Police Commission based on plaintiff's conclusory statements. Accordingly, the Court will grant defendants' motion for summary judgment as to municipal liability.

**VII.     Common Law Claims**

1.     Common Law Abuse of Process

Plaintiff claims that defendants committed common law abuse of process by illegally obtaining and executing the search warrant. Because the Court has already determined that the search warrant was valid, there is no substance to plaintiff's claim.[4] The seizure of plaintiff's audio cassettes has been deemed to be related sufficiently to the search warrant so that it does not invalidate same. Defendants' motion for summary judgment will be granted as to this count.

2.     Common Law Theft

For the reasons cited above, plaintiff's claim for common law theft must fail. The

---

[4] As for plaintiff's claim that such seizure deprived him of his ability to proceed in the labor hearings, there is no evidence that he was unable to proceed.

Court has determined the validity of the search warrant.  The taking of the audio cassettes cannot be considered a wrongful taking.  Summary judgment is appropriate for this claim.

## CONCLUSION

For the foregoing reasons, the Court will GRANT defendants' motion for summary judgment [Doc. #48] as to plaintiff's claims of violations of his rights pursuant to the Fourth Amendment, his rights to both substantive and procedural due process, his right of freedom of association, his right to petition the government for grievances, his right to privacy, qualified immunity as to defendants Hunt and Fortin, and the question of municipal liability.  The Court will also GRANT summary judgment on plaintiff's state law claims.  The Court will DENY defendants' motion for summary judgment as to plaintiff's claim of the violation of his First Amendment rights and qualified immunity as to defendant Clisham.  Therefore, the Court GRANTS defendants' motion for summary judgment [Doc. #48] in part and DENIES it in part.

SO ORDERED this 25th day of July, 2006 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge